**FILED**

October 24, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Javier Martinez_____
                                    DEPUTY

1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

_____

| | |
|---|---|
| **MANUEL GUADIAN,** §<br>§<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**DEBTBLUE, LLC,** a Texas Limited Liability §<br>Company, **NATIONAL LITIGATION LAW** §<br>**GROUP, LLP** an Oklahoma Limited Liability §<br>Partnership**,** and **COUNCIL LAW GROUP, PLLC**§<br>a Texas Professional Limited Liability Company §<br>**Defendants.** §<br>§ | **Case No. 3:23-cv-00329-KC** |

_____

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES PLAINTIFF MANUEL GUADIAN with his First Amended Complaint and will allege and show as follows:

## PARTIES

1. Plaintiff MANUEL GUADIAN ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant DEBTBLUE, LLC ("Debtblue") is a limited liability company organized and existing under the laws of Texas with a principal address of 1125 E Campbell Rd STE 200 Richardson, TX 75081 and can be served via its registered agent Corporation Service Company D/B/A CSC-Lawyers Inco at 211 E. 7th Street Suite 620 Austin, TX 78701.

3. Defendant NATIONAL LITIGATION LAW GROUP, LLP ("NLLG") is a limited liability company organized and existing under the laws of Oklahoma and can be served via its

registered agent Corporation Service Company at 3366 Riverside Drive, Suite 103 upper Arlington OH 43221.

4.      Defendant COUNCIL LAW GROUP, PLLC ("CLG") is a professional limited liability company organized and existing under the laws of Texas and can be served via registered agent Daniel Council at 2615 Lee Street Greenville, TX 75401.

5.      Empower People ("Empower") is an unidentified offshore telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendant DEBTBLUE.

6.      Defendants Debtblue, NLLG, and CLG are hereinafter referred to collectively as ("Defendants").

## NATURE OF ACTION

7.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

8.      Plaintiff Manuel Guadian ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's telemarketers placed unauthorized phone calls to him in violation of the TCPA.

9.      As part of marketing their services, Defendant authorized telemarketers to make unauthorized phone calls to Plaintiff's cell phone on their behalf.

10.     Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

11.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case

arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

12.     This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising

under Texas Business and Commerce Code 305.053 because that claim arises from the same

nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff, and adds little

complexity to the case, so it is unlikely to predominate over the TCPA claims.

13.     This Court has personal jurisdiction over Defendant because they conduct business in this

District and in the State of Texas and because the events giving rise to this lawsuit occurred in

this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant

regularly conduct business in the State of Texas and in this District, and because the wrongful

conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

15.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

16.     The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

17.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

18.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

19.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

20.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

21.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

22.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

23.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any goods or service.

24.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing

the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

25.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held

vicariously liable under federal common law principles of agency for violations of either section

227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the

Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

26.     Under the TCPA, a text message is a call.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663

(2016).

## **FACTUAL ALLEGATIONS:**

27.     Plaintiff successfully registered his personal cell phone number ending in -6018 on the

National Do-Not-Call Registry since March 5, 2023, which was more than 31 days prior to

receiving the alleged calls.

28.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove his phone number from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

29.     Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

30.     Plaintiff's personal telephone number, -6018 is registered to a cellular telephone service.

31.     Plaintiff's telephone number -6018 is a residential telephone line.

32.     Defendant Debtblue offers debt relief services to consumers.

33.     Defendants NLLG and CLG are law firms that offer legal representation to consumers.

34.     Defednants NLLG and CLG contracted with Defendant Debtblue in order to represent Defendant DebtBlue's clients for debt resolution legal representation.

35.     Defendant Debtblue contracted with an unknown third-party telemarketer ("Empower") to market and solicit Defednants Debtblue, NLLG, and CLG's services.

36.     Empower became a sub-agent of Defendants NLLG and CLG  when Defendant Debtblue contracted with Empower.

37.     Empower is an unknown entity, that through information and belief, is located offshore and out of the jurisdiction of the United States and the State of Texas.

38.     Defendant Debtblue approves of the contracts with Empower.

39.     Defendant Debtblue authorizes the payments to Empower.

40.     Defendant Debtblue pays Empower out of bank accounts Defendant Debtblue owns and controls.

41.     Empower makes solicitation phone calls on behalf of, and the direction of Defendant Debtblue.

42.     Empower generates and qualifies new clients for Defednants Debtblue, NLLG, and CLG through illegal telemarketing calls that violate the TCPA.

43.     Defendant DebtBlue supplied Empower with the minimum debt qualifications a consumer must have to enroll in Defednants Debtblue, NLLG, and CLG's services.

44.     Defendant Debtblue authorized Empower to make automated phone calls to residential phone numbers with prerecorded voice message scripts.

45.     Defendant Debtblue authorized Empower to make automated text messages to residential phone numbers.

46.     Defendant Debtblue crafted the pre-recorded voice messages and automated text messages for Empower to use for Defendant Debtblue's campaign.

47.     Debtblue instructs Empower on the times for which to place the calls to perspective consumers and which states to target as part of Debtblue's campaign.

48.     Defendants NLLG and CLG willfully and knowingly accept new customers through Defendant Debtblue's illegal telemarketing campaign.

49.     Defendants NLLG and CLG ratify the illegal behavior from Defendant Debtblue because violating the TCPA benefits Defendants NLLG and CLG financially.

50.     Defendants NLLG and CLG are well aware that accepting new customers that generate through illegal telemarketing violates the TCPA and American Bar Association prohibitions against solicitations.

51.     Defendants NLLG and CLG are well aware of the TCPA and National Bar Association prohibitions against tele-solicitations but knowingly violate these prohibitions for economic gain.

52.     Defednants Debtblue, NLLG, and CLG operate as a common enterprise while engaging in deceptive acts and practices and other violations of law alleged herein.

53.     Defendant Debtblue is owned and operated by Corey Butcher.

54.     Defendant CLG is owned and operated by Shawn Council.

55.     Defendant NLLP is owned and operated by Mark Grossman.

56.     Plaintiff received at least five (5) robocalls with a prerecorded voice message and at least two (2) automated text messages (the robocalls and text messages together "the calls") to his personal cell phone ending in 6018 from Empower soliciting debt relief services within a thirty-day period.

57.     None of the calls are directed to Plaintiff and could have reached anyone in the United States.

58.     The alleged automated text messages  ¶ 71 and 73 of this complaint were made to Plaintiff by using an automated telephone dialing system ("ATDS").

59.     The ATDS software that was used by Empower has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial and/or text such numbers.

60.      The ATDS software that was used by Empower to send the automated text messages to Plaintiff was provided by Defendant Debtblue.

61.     The automated text messages Empower made to Plaintiff on behalf of Defendants Debtblue, NLLG, and CLG were not made to Plaintiff directly and could have reached anyone in the United States (indicating the text messages were made using an ATDS).

62.     **Call# 1-** On May 23, 2023, at 10:22 AM, Plaintiff received a call with a prerecorded voice message to his personal cell phone 6018 from Empower from phone number (959) 209-1012 soliciting debt relief services.

63.     The prerecorded voice message left a call back phone number (888) 741-1216.

64.     **Call# 2-** On May 25, 2023, at 1:40 PM, Plaintiff received a call with a prerecorded voice message to his personal cell phone 6018 from Empower from phone number (806) 207-3190 soliciting debt relief services.

65.     The prerecorded voice message left a call back phone number (888) 741-1216.

66.     **Call# 3-** On May 30, 2023, at 1:42 PM, Plaintiff received a call with a prerecorded voice message to his personal cell phone 6018 from Empower from phone number (806) 207-3190 soliciting debt relief services.

67.     The prerecorded voice message left a call back phone number (877) 331-2381.

68.     **Call# 4-** On May 30, 2023, at 2:03 PM, Plaintiff received a call with a prerecorded voice message to his personal cell phone 6018 from Empower from phone number (806) 207-3190 soliciting debt relief services.

69.     The prerecorded voice message left a call back phone number (877) 331-2381.

70.     **Call# 5-** On May 31, 2023, at 10:22 AM, Plaintiff received a call with a prerecorded voice message to his personal cell phone 6018 from Empower from phone number (833) 926-1032 soliciting debt relief services.

71.     The prerecorded voice message left a call back phone number (877) 331-2381.

72.     **Call# 6 -** On June 9, 2023, at 8:28 AM, Plaintiff received an automated text message to his personal cell phone 6018 from Empower from phone number (916) 439-8117 soliciting debt relief services.

73.     The automated text message left a call back phone number (877) 541-4680.

74.     **Call# 7-** On June 15, 2023, at 8:17 AM, Plaintiff received an automated text message to his personal cell phone 6018 from Empower from phone number (207) 819-8431 soliciting debt relief services.

75.     The automated text message left a call back phone number (888) 303-1135.

76.     Plaintiff investigated the call back numbers in each and every alleged call by calling and was connected to telemarketers from Empower each time which Plaintiff was then solicited for debt relief services.

77.     On June 16, 2023, Plaintiff was investing the call back number (888) 303-1135 that was left in the automated text message he received from Empower and engaged the telemarketer in order to identify who Empower was calling on behalf of.

78.     The telemarketer from Empower named Megan, asked Plaintiff qualifying questions regarding Plaintiff's unsecured debt balance, income, credit score, and solicited Plaintiff for a debt relief service.

79.     Megan then advised Plaintiff she was going to transfer him to a "senior advisor" to discuss more about the program.

80.     Defendant Debtblue instructs Empower to say they are transferring the to a "senior advisor" instead of advising the called party they are being transferred to Defendant Debtblue in order to hide Defendants Debtblue, NLLG, and CLG's true identity and duck liability for violating the TCPA.

81.     Megan transferred the call to a representative who identified herself as Maria from Debtblue.

82.     Before Megan transferred the call to Maria, Maria stated,

"Hi, you are speaking to Megan, I have Manuel on the line with us that has twelve thousand dollars in unsecured debt and would like some assistance I will let you take it from here if that's okay? Manuel you can speak to the advisor now."

83.     Maria accepted the live transfer from Megan confirming Defendant Debtblue hired Empower for telemarketing Debtblue's debt relief services.

84.     The was no interruption or disconnection during the live transfer.

85.     Through information and belief Defendant Debtblue share a portal database with Empower which allows Empower to live transfer new client leads directly to Defendant Debtblue.

86.     Maria then asked Plaintiff qualifying questions about his debt and monthly income and solicited Plaintiff for a debt relief program on behalf of Defendant Debtblue.

87.     Plaintiff advised Maria he was interested in the debt relief program for the sole purpose of identifying and confirming the company responsible for the phone calls.

88.     Plaintiff received an email from Maria from notifications@clixsign.com and maria.segura@debtblue.com with a DocuSign signature request with the client enrollment agreement. *See Exhibit A.*

89.     The client enrollment agreement involves Defendants Debtblue, NLLG, and CLG. *See Exhibit A.*

90.     Defendant Debtblue would benefit financially by collecting $323.61/mnth from Plaintiff.

91.     Defendants NLLG and CLG would benefit financially by collecting $39.95/mnth from Plaintiff.

92.     The client enrollment agreement Plaintiff received from Maria revealed Defendants Debtblue, NLLG, and CLG are connected to Empower and are vicariously liable for the alleged phone calls.

93.     Plaintiff has never had any business relationship with Defendants Debtblue, NLLG, or CLG and never knew who Defendants Debtblue, NLLG, or CLG were prior to receiving the alleged calls.

94.     Defendants Debtblue, NLLG, and CLG employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

95.     Defendants Debtblue, NLLG, and CLG have knowledge of and have adopted and maintained TCPA violations as a sales strategy for their financial gain.

96.     Defendants Debtblue, NLLG, and CLG refuse to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendants Debtblue, NLLG, and CLG financially.

97.     Defendants Debtblue, NLLG, and CLG are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitation calls into Texas that Plaintiff received from Empower calling on behalf of Defendants Debtblue, NLLG, and CLG.

98.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration Database") does not contain Defendants Debtblue, NLLG, or CLG's registration.

99.     Defendants Debtblue, NLLG, or CLG do not qualify for an exemption under § 302.053.

100.    No emergency necessitated none of the alleged calls.

101.    Plaintiff sent an internal do-not-call policy request to Defendant Debtblue to email vip@debtblue.com on June 19, 2023, which is an email listed on the website they own and control https://debtblue.com/

102.    Defendant Debtblue never sent Plaintiff their internal do-not-call policy.

103.    Upon information and belief, the Defendant Debtblue did not train Empower or their representatives who engaged in telemarketing on the existence and use of Defendant DebtBlue's internal do not call policy as they failed to recognize Plaintiff's personal cell phone 6018 is registered on the National Do-Not-Call Registry.

104.    Such conduct violates the TCPA and its implementing regulations, 47 CFR §

64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

105.    Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phones because the phone lines were tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephones for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANTS DEBTBLUE, CLG AND NLLP FOR THE CONDUCT OF EMPOWER

### (all defendants)

106.    Defendants Debtblue, NLLG, and CLG are vicariously liable for the telemarketing calls from Empower that generated the Plaintiff's lead on their behalf.

107.    The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

108.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

109.    The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

110. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

111. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

112. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

113. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

114.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

115.    Defendants Debtblue, NLLG, and CLG are legally responsible for ensuring that Empower that makes telemarketing calls on behalf of Defendants comply with the TCPA when so doing.

116.    Defendants Debtblue, NLLG, and CLG knowingly and actively accepted business from Empower that originated through illegal telemarketing.

117.    Defendants Debtblue, NLLG, and CLG knew (or reasonably should have known) that Empower was violating the TCPA on their behalf but failed to take effective steps within their power to force Empower to cease that conduct.

118.    By hiring a company to make calls on behalf of Defendants Debtblue, NLLG, and CLG, Defendant Debtblue "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

119.    Moreover, Defendant Debtblue maintained interim control over the actions of Empower.

120.    For example, Defendants Debtblue, NLLG, and CLG had absolute control over whether, and under what circumstances, they would accept a customer from EMPOWER.

121.    Defendant Debtblue also gave interim instructions to Empower by providing lead-qualifying instructions and lead volume limits.

122.    Defendant Debtblue donned Empower with apparent authority to make the calls at issue. Thus, Empower pitched Defendant Debtblue's debt relief services in the abstract.

123.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

124.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

125.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

126.    Empower transferred customer information, including Plaintiff's contact information, directly to Defendant Debtblue. Thus, Debtblue had the "ability . . . to enter consumer information into the Defendant Debtblue's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

127.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

128.    Defendants Debtblue, NLLG, and CLG are the liable parties as the direct beneficiaries of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when Empower solicited Plaintiff for debt relief services.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

### (all defendants)

129.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

130.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

### (Against all Defendants)

131.    The actions of Defendants Debtblue, NLLG, and CLG violated the Texas Business and Commerce Code 302.101 by authorizing Empower to place solicitation phone calls to a Texas resident on behalf of Defendants Debtblue, NLLG, and CLG without having a registration certificate and bond on file with the Texas Secretary of State.

132.    Defendants Debtblue, NLLG, and CLG initiated the phone calls alleged herein and are a "seller" under the Texas Business and Commerce Code because it makes telephone solicitation on its own behalf through salespersons and authorized third parties such as their telemarketer Empower that called Plaintiff in this case.

133.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

134.    The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

135.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

136.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek

damages of up to $5000 per violation of §302.101.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
### AS A RESULT OF THE CALLS
### (Against all Defendants)

137.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the

functionality of his phone decreased because of unnecessary charging, erosion of phone memory,

and had his privacy invaded by the harassing telemarketing calls.

138.    The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a

"nuisance and invasion of privacy."

139.    Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by

EMPOWER on behalf of Defendants Debtblue, NLLG, and CLG.

140.    The calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights

and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the

Plaintiff.

### CAUSES OF ACTION:

## COUNT ONE:
## Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent
### (Against All Defendants)

141.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

142.    Defendants Debtblue, NLLG, and CLG and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least seven (7) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system and/or a prerecorded voice message without prior express written consent.

143.    Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(b)(3)(B) by Defendants Debtblue, NLLG, and CLG by the telephone calls described above, in the amount of $500.00 per call.

144.    Plaintiff was further statutorily damaged because Defendants Debtblue, NLLG, and CLG willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court triple the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

145.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls.

## COUNT TWO:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**
**(Against All Defendants)**

146. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

147. Defendants Debtblue, NLLG, and CLG and/or their affiliates or telemarketers called Plaintiff's private residential telephone numbers which were successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

148. Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

149. Plaintiff was further statutorily damaged because Defendants Debtblue, NLLG, and CLG willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

150. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### (Violations of The Texas Business and Commerce Code 305.053)

151. Plaintiff incorporates the foregoing allegations as if set forth herein.

152. The foregoing acts and omissions of Defendants Debtblue, NLLG, and CLG or their telemarketers constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular

telephone numbers without his prior express written consent in violation of 47 U.S.C. §

227 et seq. Defendants Debtblue, NLLG, and CLG violated 47 U.S.C. § 227(d) and 47

U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using automatic telephone dialing system

and/or a prerecorded voice message that does not comply with the technical and

procedural standards under this subsection.

153.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such

violation. **Texas Business and Commerce Code 305.053(b).**

154.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such

knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FOUR:

### (Violations of Texas Business and Commerce Code 302.101) Failure to obtain a Telephone Solicitation Registration Certificate

155.Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

156.    Defendants Debtblue, NLLG, and CLG and/or their affiliates or telemarketers made at least

five (5) solicitation sales calls to Plaintiff without having a valid telephone solicitation as

required under Tex. Bus. Com. Code 302.101.

157.    As a result of Defendants Debtblue, NLLG, and CLG and/or their affiliates or

telemarketers' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up

to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

158.    As a result of Defendants Debtblue, NLLG, and CLG and/or their affiliates or telemarketers

violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of

prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Manuel Guadian prays for judgment against the Defendants severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for seven (7) calls.

E.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for seven (7) calls.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporations for five (5) calls.

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporations for five (5) calls.

H.      An award to Mr. Guadian of damages, as allowed by law under the TCPA and Texas state law;

I.      An award to Mr. Guadian of interest, costs, and attorneys' fees, as allowed by law and equity.

J.      Such further relief as the Court deems necessary, just, and proper.

October 24, 2023,                          Respectfully submitted,


Manuel Guadian
Plaintiff, Pro Se
3805 Tierra Fiji Ln
El Paso, Texas 79938
915-251-6018
maguadianjr@gmail.com